## APPEAL OF F. D. KEIM.

### Docket No. 2488. Decided September 30, 1926.

1. When a corporation liquidates and its assets are taken over by its stockholders, who conduct the business as a partnership, the transaction is controlled by section 201 (c) of the Revenue Act of 1918.

2. When it is shown that no market overt existed at the time and place of transfer of property, its fair market value may otherwise be shown.

*Harry C. Weeks, Esq.*, for the petitioner.
*Willis D. Nance, Esq.*, for the Commissioner.

This appeal is from the determination of a deficiency in income tax for the year 1919 of $705.70, with the petitioner claiming an overassessment of $1,065.34.

The petitioner alleges that the Commissioner erred in treating as taxable income an alleged profit realized by the petitioner on the liquidation of a corporation in which he owned stock, and the transfer of the assets of the corporation to the stockholders, as a partnership. The petitioner offered no evidence of the cost to him of his stock in the corporation. Neither was there evidence of the amount of capital stock of the corporation nor of the cost to the corporation of the capital assets other than the book values shown in the findings of fact.

#### FINDINGS OF FACT.

The Dixon-Keim Motor Co. was a corporation operating an auto sales agency and a garage business in Wichita Falls, Tex.

The entire stock of the corporation was owned by three persons. F. D. Keim owned 11/24ths; L. L. Dixon owned 11/24ths; and Lloyd Weaver 2/24ths.

On July 1, 1919, in pursuance of a prearranged plan, the corporation surrendered its charter and its assets were taken over by its three stockholders, as a partnership, each partner having the same proportionate interest in the partnership held by him in the corporation, and the business was thereafter conducted as a partnership. On July 1, 1919, the assets and liabilities of the corporation were as follows:

| Assets. | Book value. | Liabilities. | Book value. |
|---|---|---|---|
| Cash | $6, 003. 03 | Notes payable | $7, 500. 00 |
| Liberty bonds | 2, 173. 75 | Accounts payable | 6, 215. 70 |
| War savings stamps | 105. 75 | Income taxes for 1918 and 1919 | 19, 153. 49 |
| Notes receivable | 14, 326. 26 | | |
| Accounts receivable | 24, 958. 71 | | |
| Deposit accounts | 700. 00 | | |
| Returned checks | 15. 91 | | |
| New car inventory | 1, 475. 00 | | |
| Second hand cars | 4, 476. 00 | | |
| Parts inventory | 19, 875. 55 | | |
| Miscellaneous merchandise | 9, 080. 29 | | |
| Oil stocks | 2, 650. 00 | | |
| Oil and gas leases | 656. 30 | | |
| Shop equipment inventory | 3, 846. 72 | | |
| Furniture and fixtures | 2, 891. 22 | | |
| J. D. Moulder | 232. 50 | | |
| Improvements to leased property | 761. 38 | | |
| Total | 94, 228. 37 | Total | 32, 869. 19 |

One of the valuable assets of the corporation was a sales agency contract with the Buick Automobile Co., which was not listed as an asset and was not assignable. The partnership retained the Buick agency and operated under it.

There was no open market, in the common acceptation of that term, for the business conducted by the corporation as a going concern at the time and place of dissolution. As a going concern its capital assets did have a substantial value, that is, a fair market value of 75 per cent of their book value. The petitioner in his return did not include any gain in the transfer of assets from the corporation to the partnership. The Commissioner alleged and included a gain in that transfer of $11,229.54, and determined a deficiency.

### OPINION.

LOVE: The petitioner's only assignment of error is: " There was included as income to the petitioner the sum of $11,229.54, claimed to be a profit upon the liquidation of the Dixon-Keim Motor Company, a corporation, whereas petitioner alleges upon information and belief that no sum whatsoever should have been included upon this account."

The petitioner's propositions of law, under his assignment of error, in substance, are:

(1) Under the Revenue Act of 1918 no taxable gain or income is received by one who receives in lieu of his stock in a private corporation a proportionate interest in a partnership formed by the stockholders to take over the assets of the corporation upon dissolution. ·

(2) A tax levied upon or measured by the difference between the cost of the stock in a corporation and the proportionate share of the

net book value or net actual value of the assets is not a tax on income, but a direct tax, and conflicts with clause 3, of section 2, and clause 4 of section 9 of Article I of the Constitution of the United States.

(3) That, unless there was a market for the business, stock or assets of the corporation, there was no market value within the meaning of the taxing statute, and hence no measure by which gain or loss may be computed.

The petitioner by his first proposition seeks to bring himself within the provisions of section 202 (b) of the Revenue Act of 1918, which deals with the reorganization of a corporation. It is evident that the rights and powers of a partnership are essentially different from the rights and powers of a corporation. *Appeal of E. C. Huffman,* 1 B. T. A. 52.

Moreover, in the instant appeal, the assets of the corporation were not taken over by the partnership as an entity, but were taken over by the individuals who constituted the partnership, and although the partnership agreement was consummated prior to the dissolution of the corporation, the legal result was not different from what it would have been had the partnership been formed after the dissolution.

This case is governed by the following provision of section 201 (c) of the Revenue Act of 1918:

Amounts distributed in the liquidation of a corporation shall be treated as payments in exchange for stock or shares, and any gain or profit realized thereby shall be taxed to the distributee as other gains or profits.

The measure of gain or loss is the difference between the cost or March 1, 1913, value of the shares of stock and the money or money's worth of what is received in liquidation. If property other than money is received, the taxpayer has received income to the extent of its fair market value.

In his second proposition the petitioner challenges the constitutionality of a statute which levies a tax measured by the difference between cost of shares of stock in a corporation and the value of its assets distributed to its stockholders in liquidation of the corporation. We do not feel called upon to discuss in detail the question of the constitutionality of the statute involved in this appeal. Suffice it to say that the language of the statute as to the taxability of such profits is plain, and the courts have in a number of cases enforced its provisions.

We come now to the petitioner's third proposition, wherein he contends that, by reason of the fact that no market existed for the

business as a going concern, or for the stock, or the assets in bulk, no measure of gain or loss has been provided by statute. Hence there was no taxable gain or loss in the transaction. It was clearly shown by the evidence that the business conducted by the corporation had been a prosperous one. The two principal stockholders in the corporation and largest shareholders in the partnership, F. D. Keim and L. L. Dixon, testified by deposition. A part of Keim's deposition is as follows:

Q. Upon what basis do you think it [the business] would have had to have been placed in order to have sold either the entire business or your interest in it?

A. You mean the accounts and everything?

Q. Yes, the whole thing. I am not asking for an exact figure, but whether it would have had to have been sold at a sacrifice, or a profit.

A. I think it would have had to have been sold at a sacrifice.

Q. A considerable sacrifice?

A. I would say from 15 to 25 per cent.

Q. Off of what?

A. Off of the inventory value of the assets.

Q. Now in your opinion would that have been adequate from your standpoint for a business which was paying you like that was paying you?

A. No sir.

Q. Would you have sold at such a price?

A. No sir.

L. L. Dixon testified as follows:

Q. Now let us assume, Mr. Dixon, that at the time this dissolution took place it was the desire of all the partners to sell this business for the best price they could get and to sacrifice it if necessary to move it, what would be your opinion as to how much you would have to discount these assets from their book value in order to sell them?

A. That would be a matter of speculation. It would be more or less contingent on the Buick Motor Company's attitude towards the person to whom we were selling, as the price we could get would depend on whether it was satisfactory with the Buick Motor Company to make a new contract with the purchaser, or else the other assets would have to be greatly discounted.

Q. How much?

A. 50 per cent.

Q. Even if the purchaser could make a new contract with the Buick people could you in your opinion have received book value for your assets?

A. No sir.

Q. Under such circumstances, about how much would you have to discount them?

A. I would say some items more than others, on an average of 25 per cent.

In the case of *Walter* v. *Duffy*, 287 Fed. 41, the question was the " fair market value " of stock on March 1, 1913. Proof had been made of sales of shares of the stock involved near the date in question, but

it was further shown that the stock was not on the market, and, in the common acceptation of the term, had no market value; that the few sales made were made under abnormal conditions, either forced by a creditor who held stock as collateral or under other circumstances equally impelling. The trial court refused to admit evidence tending to show real value and based its decision on values shown by the few sales.

After discussing at length the purport of the term " fair market value," the court said:

We are of the opinion that the court fell into error in holding, as it did, that because sales of this stock had been made, the fact of sales, in itself and without any regard to the circumstances under which they were made, conclusively established the statutory " fair market price " of this stock. Clearly not. * * * And it was error not to admit proof of the circumstances under which the sales were made, and evidence tending to establish the intrinsic value of the stock on March 1, 1913.

If evidence is admissible to controvert or vary prices obtained in actual sales, then surely, where it is shown that no sales were made, evidence of value is pertinent and probative. The petitioner and his witnesses furnished such evidence, which is the only evidence submitted, and we have accepted the valuation placed on the assets by the petitioner. Petitioner himself testified that in his judgment the assets were worth something like 85 per cent of the book value. Another member of the firm testified that they were worth 50 to 75 per cent of their book value.

We believe that, under the evidence, a fair market value of 75 per cent of book value has been established.

> *Redetermination of the amount of deficiency, using cost as originally used by the Commissioner, will be made on 15 days' notice, under Rule 50.*